St. Louis Domicile and Savings Loan Association, Respondent, v. Edward Augustin, Appellant.

### April 25, 1876.

1. Where a committee of a corporation are authorized, by a resolution of the directors, to make collections due the corporation, they may institute proceedings to collect, in the name of the corporation, against an individual, without an order specifying the mode of collecting that particular indebtedness, or without any more particular authority with reference thereto.

2. Neglect to choose officers of a private moneyed corporation does not work a dissolution of the corporation. The acts of the officers holding over are valid.

3. In an action on a penal bond, judgment may be entered for the amount of the bond, with interest from the date of suit.

4. Where a corporation is, by its charter, authorized to make an usurious contract, and where no instruction as to usury was asked or given the jury, and where usury was not pleaded, a verdict will not be disturbed because the evidence discloses usury.

5. An entry of judgment on the assessment of damages by a jury in a suit upon a penal bond, which is not in the proper form for such a judgment, cannot be amended by a subsequent entry of judgment, the court taking the cause as then submitted, without having made any order whatever regarding the first entry; and on appeal both judgments will be set aside for irregularity.

Appeal from St. Louis Circuit Court.

*Reversed and remanded.*

*Gottschalk* and *H. D. Wood*, for appellant, cited: Forest City United Land and Building Assn. *v.* Gallager *et al.*, 25 Ohio St. 208; Mercer *v.* Conc. B. & S. Assn., 25 Ohio St. 187.

*Slayback & Haeussler*, for respondent, cited: Wag.

Stat. 293, 783, sec. 5; Kansas City Hotel Co. *v*. Harris, 51 Mo. 464; Rutherford *v*. Williams, 42 Mo. 18; Smith *v*. Best, 42 Mo. 185; DeKalb *v*. Hixon, 44 Mo. 341; Packman *v*. Meatt, 49 Mo. 348.

BAKEWELL, J., delivered the opinion of the court.

This is a suit on a bond in the penal sum of $3,400, executed by defendant on April 15, 1858.

Plaintiff is a corporation created by the Legislature of this State in 1857. Its object, as declared in the act, is "accumulation of a fund, by small monthly installments, to enable the members of the association to purchase real estate, erect buildings, redeem mortgages, satisfy ground rents, and effect similar purposes." Each stockholder is to pay $1 monthly on each share of stock, until the value of the whole stock is sufficient to divide to each share $200. For neglect to make such payments, 10 cents monthly is to be paid on each share.

Each stockholder is entitled to a loan of $200 for each share he holds, the loan to be disposed of to the highest bidder, not to be made under par, the premium offered for the loan to be deducted when the loan is made. The loan must be secured by bond, mortgage, or deed of trust, and one share of stock for each $200 to be assigned as collateral, interest to be paid monthly, at agreed rates, not to exceed 1 per cent. per month.

The officers of the association are declared to be a president, vice-president, and secretary and treasurer, and eight directors, who may enact by-laws for their own government. The charter also provides that the president, treasurer, and directors shall constitute the board of directors, and shall be elected at the regular annual meeting.

It appears from this statement that certain provisions which, when existing in the shape of a constitution and by-laws, in similar institutions, have been held by the courts of Pennsylvania, Tennessee, and, perhaps, of other States,

to be unlawful, are, in the case of this corporation, made a part of the charter itself, and directly sanctioned by the legislative power.

Defendant, at the time of the transaction set forth in the petition, was a director, as well as a stockholder, of plaintiff.

It appears from the pleadings and evidence that he borrowed $3,400, on April 15, 1858, from plaintiff, bidding 40 per cent. for the loan, and getting it over others who competed. After deducting the premium, $1,360, he, therefore, received but $2,040. Defendant was then the owner of twenty-three shares of stock. The loan was made on seventeen of these shares, which he then assigned to plaintiff as collateral, and executed the bond sued on, securing its payments by a deed of trust upon certain real estate in the city, which seems to have been a sink-hole of little value, and which was a source of expense, not only for taxes, but to comply with orders of the board of health.

Appellant paid his dues till August, 1860. On May 15, 1861, he assigned to the plaintiff the six shares on which he had obtained no loan, and received a credit of $308.15 for them upon the books of the association, to which he was indebted, at the date of the payment, $302.50. After that date he wholly ceased to make any payments. His shares were forfeited, and the deed of trust foreclosed by order of the board of directors, by a sale which took place on April 5, 1852. The net proceeds of this sale were $126.11. The property was purchased at the sale by plaintiff.

Nothing further was done in the matter on either side until 1866, when plaintiff, having expended $1,005 on the real estate for taxes and charges, a portion of which were a lien when it bought the land in at the sale under the deed of trust, and being unwilling to spend any more money upon the lot, sold it, at the instance of defendant, for $1,100, to his brother-in-law, Nischuitz, who owned the adjoining piece of ground.

In July, 1867, a meeting of stockholders of plaintiff was

held, at which time it was resolved that the loan committee should collect, and divide amongst the stockholders, the assets of the association, the shares of stock having reached $200. The loan committee consisted then of the president, secretary, and treasurer. The secretary, who was much urged by stockholders to take action in making this collection, saw the president and treasurer in regard to the matter just before suit was commenced, and was then directed to commence the suit in the name of the corporation, although there was no formal meeting of the committee as such, and no formal resolution or entry in regard to the matter in the minute-book, or otherwise. The petition in the cause was filed on May 18, 1871. On the trial, defendant, swore that, at the time that plaintiff, at defendant's instance, conveyed the lot mentioned to Nischuitz for $1,100, it released defendant from all further liability on his bond. But, in this he is directly contradicted by the officers of the company, with whom he says the transaction was had, and no circumstances appear which corroborate the view which he seems now to take of what passed between them at that time.

The jury found a verdict for plaintiff in the sum of $3,400, with interest from commencement of the suit, upon which judgment was entered for $3,400, the penalty of the bond sued on, with interest from the commencement of the suit, amounting to $306, making in the aggregate the sum of $3,706 for its damages, "together with costs." A motion for a new trial, and in arrest of judgment, were at once filed. These motions were taken under advisement, and, at the next term, the plaintiff entered a *remittitur* of $1,397.68.

The motions were then overruled, and judgment then and there entered anew for plaintiff, in the following form:

"Now at this day the plaintiff, by attorney, freely remits the sum of one thousand three hundred and ninety-seven dollars and sixty-eight cents, part and parcel of the judgment heretofore entered in this cause, on 19th November,

1872, and the cause having been submitted to the court upon the pleadings herein and the proofs, the court doth find the issues for the plaintiff, and that the damages herein amount to the residue of said original judgment. It is, therefore, considered by the court that the plaintiff recover of the defendant the sum of three thousand four hundred dollars, the penalty of the bond sued on in this cause, and, also, its costs and charges herein expended, and have execution for the sum of $2,308.32, and costs aforesaid.''

To the overruling of these motions, and the entry of this judgment, defendant excepted, and the cause is brought here by appeal.

1. It is contended by appellant that, because the board of directors never expressly, by resolution, authorized the commencement of this suit, and, inasmuch as the charter of respondent provides (sec 17) that '' if monthly dues and interest be suffered to remain unpaid more than three months, the directors may compel payment of the principal and interest, ordering proceedings on the bond and mortgage according to law ,'' therefore, this suit was commenced without proper authority, and should be dismissed. We do not think so.

The loan committee appears to have been authorized to collect all outstanding amounts due the corporation, and could, undoubtedly, use the name of the corporation in any suits necessarily commenced to effect this object. The suit was commenced by direction of this committee. A consent of a majority of the board of directors was not necessary under the circumstances of this case.

Nor do we agree with counsel for defendant in thinking that this corporation is shown to have been dissolved, or that there were no officers competent to act. The acts of the officers of a corporation irregularly elected are valid until judgment of ouster. Neglect to choose officers at the proper time does not necessarily work dissolution of a private moneyed corporation, and where the charter provides for

annual elections, the better opinion is that the old corporate‧ officers continue in office until others are elected. The old president, treasurer, and secretary had, at least, a colorable‧ right to direct the institution of these proceedings, and there is nothing appearing in evidence to sustain this objection of defendant.

The instruction submitting to the jury the question as to whether or not the corporation was dissolved, was properly refused, as also the instruction that plaintiff could not recover if this suit was instituted before the bond sued on was declared forfeited and due by the board of directors, or‧ before the board ordered the institution of proceedings.

2. It is next insisted that the court below erred in giving the following instruction at the instance of plaintiff:

"If the jury believe from the evidence that the defendant borrowed from plaintiff $3,400, being $200 on each of‧ his seventeen shares of stock, and received said sum less the premium he had agreed to pay therefor, he at that time being one of the directors of plaintiff, and that a full settlement had never been made between plaintiff and defendant for said demand, and that when this suit was‧ brought, nor since, said company has received no sum from defendant on account of said debt, then they should find for plaintiff for such sum as they may believe still due to plaintiff, said sum, however, not to exceed $3,400 with interest from the date of suit."

Counsel for defendant insist that this instruction is bad, because it leaves out of view the credits given to defendant by the petition, and that it is misleading in presenting to‧ the jury that the damages to be considered were the $3,400‧ borrowed on seventeen shares, and that plaintiff is entitled to recover whatever is due, not exceeding $3,400 with interest from date of suit. The instruction does not take‧ from the jury the consideration of any credits admitted by the pleadings or shown by the evidence. But a question might arise as to the legality of the direction to the jury

limiting the amount which plaintiff might recover, not to the penalty of the bond, but to the penalty of the bond with interest from the date of suit. The petition in the case asks for judgment only for the penalty of the bond and costs, and is drawn in accordance with what was for many years regarded as the established rule in this State. In some States it is held that, upon breach of the condition of a penal bond, the penalty becomes a debt due in law, from which the obligors may discharge themselves, when the liability exceeds the penalty, by payment of the penalty alone, and that, if this be not done, the penalty will bear interest. This was the early doctrine in Missouri, and in *Price* v. *Rector*, 1 Mo. 77, it was decided that, on a penal bond, interest can be given by way of damages, but subsequently, in *Farrar* v. *Christy*, 24 Mo. 453, the Supreme Court decided that judgment on a penal bond can in no case be entered otherwise than for the penalty of the bond, on which execution will be directed for such damages as the jury may find, not to exceed the penalty of the bond, and this doctrine was again asserted in *State* ex rel. v. *Sandusky*, 46 Mo. 377.

But, in 47 Missouri Reports, the case of the *Union Savings Institution* v. *Edwards* is reported. The penalty of the bond in that case was $15,000, and the jury were instructed that, if Edwards was a defaulter in the sum of $14,352.14, they may find a verdict for that amount with interest at 6 per cent. This is an amount greater than the penalty of the bond.

The original record shows that the verdict is for more than $15,000, though the report of the case does not give the amount of the verdict.

And the attention of the court was specially directed to the point, for the sixth proposition in the abstract of the brief of respondent's counsel, printed with the report, is that " it was competent for the court to give the judgment shown by the record for the penalty of the bond and interest from

the commencement of the action, restricting execution to the sum awarded by the jury and costs.''

The Supreme Court declares the instructions given on this point correct, and says that there is no error in the whole record. This case was decided in 1871, and we are not aware that there has been any ruling of the Supreme Court since, on this point, in a contrary sense, so that it cannot be said that the declaration of law given in the case at bar on this subject was objectionable as a statement of the existing law of this State in that respect.

3. It is further urged that this instruction is erroneous, because it recognized the right of plaintiff to recover $3,400 for a loan of $2,040, and thus directs them to give to plaintiff a usurious interest.

The law does not prohibit a recovery where the interest is usurious, but provides that, where the defendant in his answer alleges that a higher rate of interest than 10 per cent. is agreed for or received, and the answer is sustained by the verdict of a jury, or finding of a court, judgment shall be rendered for the principal sum, and interest at 10 per cent., and the court shall direct the whole interest, when collected, to be applied to the school fund of the county.

In this case, no instruction was asked as to the question of usury, and no direction to the jury was asked or given on the subject, consequently there is no finding that the transaction was usurious. But, even though it plainly appear by the evidence to be usurious, it was a contract which plaintiff, by its charter, had authority to make.

Defendant, under the provisions of the charter of the corporation, of which he was director, bid 40 per cent. for this loan at 6 per cent. per annum. He has had the money and paid no interest for nearly fifteen years. He actually received $2,040, and that sum at 10 per cent. for seven years amounted to more than the total penalty of the bond.

Defendant is not asking equitable relief, but, if he were, we cannot see that there is any hardship in the case. The

facts in other cases, to which we are referred, and in which equity has interfered to relieve stockholders from hard bargains with building associations having similar charters, in other States, are not analogous to those presented in the case at bar.

4. It is claimed that the damages are excessive. The sum for which execution was directed to go, on the last entry of judgment, is considerably less than the amount which would seem to have been due at that date, after charging the defendant with the actual sum received and interest, and giving him every credit to which he appears to be entitled.

5. Counsel for appellant also insist that the court below invaded the province of the jury in calculating the interest. This is true, and it was error to do so. The entry of judgment upon the verdict was also objectionable in form, and, the attention of the court being directed to this, an attempt was made below to rectify this by a new entry of judgment, and were the state of the record such as to admit of leaving this last judgment undisturbed, we should feel that there was no error in this case of which defendant could complain.

This claim was nearly barred by the statute when suit was commenced. Almost five years have elapsed since that time, and we are asked by plaintiff if we find nothing requiring a new trial, not to reverse this case for mere error in the form of the judgment, but to give here such judgment as, in our opinion, should have been entered in the court below.

The whole case is before us, and we see no error, up to the entry of the judgment, that would warrant a reversal; but the irregularities from that point are of such a character that we are compelled to remand the case.

Of these irregularities the first in order arose, apparently, from the misprision of the clerk in the wrong entry of judgment, and was clearly amendable at any subsequent term within the period limited by statute.

It was long ago said by Judge Scott (*Lane* v. *Kingsbury*, 11 Mo.), that in all cases the entry of judgment should be suspended until the expiration of the time within which a motion for a new trial can be made. The contrary practice probably arose at a remote period, when the court was in session each term but a few days. It is to be regretted that an irregular practice in regard to such entries still prevails, and that, to save trouble to the clerk, the verdict and judgment are entered at once. It is this absurd custom which has given rise, apparently, to all the difficulty in the case at bar.

According to the faulty practice prevailing in this matter, on the rendition of the verdict in this case, without giving time for a motion in arrest, judgment was at once entered upon the record of the court below. This entry was not the proper form of entry of a judgment on assessment of damages by a jury in a suit upon a bond with a penalty. A motion to set aside the verdict and for a new trial, and a motion in arrest of judgment, were then filed. Meanwhile, the judgment was in fact recorded, and no motion was ever made to set it aside; no one interested, apparently, adverted to the fact that it had ever been entered. At the next term the motions in arrest and for a new trial were overruled, and whilst the old judgment stood on record unreversed, and without making any order whatever in regard to it, the court, as the record declares, takes the case as submitted anew on the pleadings and facts before it, enters a new judgment for the penalty of the bond, and considering that the verdict of the jury was for $3,400, together with an amount of interest which calculation shows to be $306, and that plaintiff remits $1,397.68, the court makes the necessary addition and subtraction, and directs execution to issue for $2,308.32. Exception is taken by defendant to this action of the court, but no motion is made to set this new judgment aside, and an appeal is taken, without any further action on the part of counsel, to this court.

The appeal seems to be taken from the first judgment, and if we reverse that, the second judgment, which was regularly entered whilst another final judgment in the same cause remained unreversed, and which has neither consent of parties nor a finding of a jury to support it, will remain.   If we reverse the second judgment, we do here what the court below has not been asked to do, and the first judgment still remains of record, with no order reversing it, and apparently a lien and a cloud upon the title of any real estate of defendant in this county.   It has, however, been decided that after judgment has been entered up on verdict, though strictly speaking such a judgment should be set aside before a new trial is had, yet, if on motion the judgment is set aside and a new trial granted and had, the judgment will be deemed to have been set aside.   *Lane* v. *Kingsbury*, 11 Mo. 402.

We think it better that these irregularities should be corrected in the tribunal in which they occurred, and see no other course before us than to remand the cause for further proceedings in the court below, in accordance with this opinion.

For manifest irregularities both judgments should be set aside, and if plaintiff agree to enter a *remittitur* for an amount which will reduce the amount due to a sum equal to $2,308.32, with interest from the date of the last judgment, then judgment should be entered for the penalty of the bond, with execution for the last named amount.   The other judges concur.